UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TERRIA MCKNIGHT, PARENT OF JAREL MCKNIGHT, <br><br> Plaintiff, <br><br> v. <br><br> LYON COUNTY SCHOOL DISTRICT, <br><br> Defendant. | Case No. 3:15-cv-00614-MMD-CBC <br><br> ORDER |

## I. INTRODUCTION

This action arises from an appeal of a hearing officer's decision brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. The Court has reviewed the parties' briefs (ECF Nos. 43,[1] 46,[2] 47, 48) as well as the administrative record[3] (ECF No. 44). For the reasons discussed herein, the hearing officer's decision is affirmed,[4] and judgment is entered in favor of Defendant Lyon County School District. The motion for settlement conference (ECF No. 51) is denied as moot.

---

[1] Plaintiff's initial opening brief (ECF No. 43) was filed before the administrative record was filed and rehashes arguments related to claims this Court already addressed in its previous order (ECF No. 41). To the extent this brief may be construed as a motion for reconsideration of that order, the Court denies reconsideration for the reasons already stated in that order.

[2] Plaintiff, who is proceeding pro se, filed a motion to add a more definitive statement to her opening brief (ECF No. 46). The Court construes this as a supplement to her previous filing. Because this motion was filed within thirty days of the filing of the administrative record, the Court grants the motion and consider its contents.

[3] The Court refers to the administrative record as "AR" throughout this order. The AR is docketed at ECF Nos. 44-2 through 44-10.

[4] The Court previously denied summary judgment without prejudice on Counts 4 and 5 of the Complaint, indicating that both functioned as an appeal of the state review officer's decision. (*See* ECF No. 41 at 8, 14-15.) By affirming the ultimate decision of the

## II. STATUTORY FRAMEWORK

The Individuals with Disabilities Education Act ("IDEA") provides states with federal funds to assist in the education of children with disabilities. *Endrew R. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017). Specifically, the IDEA requires that states establish policies and procedures to ensure that a free appropriate public education ("FAPE") is available to all children with disabilities. 20 U.S.C. § 1412(a)(1)(A). The IDEA defines a FAPE as "special education" provided at the public's expense. *Id.* § 1401(9). Generally, under the IDEA a child receives a FAPE if "the program addresses the child's unique needs, provides adequate support services so that the child can take advantage of educational opportunities, and is in accord with the [individualized education plan]" of that child. *L.J. by and through Hudson v. Pittsburg Unified Sch. Dist.*, 850 F.3d 996, 1003 (9th Cir. 2017) (citing 20 U.S.C. § 1401(9)). A FAPE is required under both Section 504 of the Rehabilitation Act ("Section 504") and the IDEA, but the requirements for a FAPE under Section 504 are not identical to those under IDEA. *See Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008). However, adopting a valid individualized education plan ("IEP") under the IDEA is sufficient to satisfy the requirements of FAPE under Section 504. *Id.* (citing 34 C.F.R. § 104.33(b)(2)).

Under the IDEA, an IEP must be prepared and reviewed at least annually by school officials. *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 182 (1982) (citing 20 U.S.C. § 1414(a)(5)). The IEP is "prepared at a meeting between a qualified representative of the local educational agency, the child's teacher, the child's parents or guardian, and, where appropriate, the child." *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 432 (9th Cir. 2010). The IEP "documents the child's current 'levels of academic achievement,' specifies 'measurable annual goals' for how she can 'make progress in the general education curriculum,' and lists the 'special education and related services' to be provided so that she can 'advance appropriately

---

state agency, the Court implicitly finds in favor of Lyon County School District on Counts 4 and 5.

toward those goals.'" *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017) (quoting 20 U.S.C. §§ 1414(d)(1)(A)(i)(I), (II), (IV)(aa)). The IEP must also include a description of how the child's progress towards meeting the IEP's stated goals will be assessed, *Endrew F.*, 137 S. Ct. at 994, and "[w]hen periodic reports on the progress of the child is making towards meeting the annual goals . . . will be provided," 34 C.F.R. § 300.320(a)(3)(ii). The latter requirement may be met through the use of quarterly or other periodic reports. *Id.*

A parent may file a due process complaint under the IDEA for two reasons: (1) to challenge the identification, evaluation or educational placement (or lack thereof) of a child with a disability; or (2) for the failure of a school to provide a FAPE to a qualifying child. *See id.* § 300.507(a)(1). After making her complaint, a parent is entitled to "an impartial due process hearing . . . conducted by the State education agency or by the local educational agency or an intermediate educational unit, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). If either party is dissatisfied with the state educational agency's review, that party may bring a civil action in state or federal court. *Id.* § 1415(i)(2); *see also* 34 C.F.R. §§ 300.514(d), 300.516(a).

When a parent challenges whether a school has provided her child with a FAPE under both Section 504 and the IDEA, the parent must exhaust the administrative remedies provided for under IDEA. *See Fry*, 137 S. Ct. at 754-55. Nevada has adopted a two-tier system for special education due process hearings. See Nev. Admin. Code ("NAC") § 388.310, 388.315; *see also Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 881 (9th Cir. 2001). At the first level of review, a hearing is conducted by an impartial hearing officer ("HO"), and the HO then issues findings of fact and a decision in writing. *See* NAC §§ 388.306(10)(a), 388.310(11)-(12). A parent may then appeal the HO's decision for a second-level review before the state education agency, *see* 34 C.F.R. § 300.514(b), which occurs when the Nevada Department of Education appoints a state review officer ("SRO") to conduct a review of the HO's decision. NAC § 388.315(1). The SRO also issues written findings and a decision to the parties. *Id.* § 388.315(1)(g).

3

## III. RELEVANT BACKGROUND

Plaintiff Terria McKnight brings this action on behalf of her son, J., who is a child with a disability—specifically autism—attending Yerington Elementary School within the Lyon County School District ("LCSD" or "the District"). On August 17, 2017, this Court issued an order narrowing the issues for review in this case. (ECF No. 41.) Specifically, the Court limited its review to two claims, one under Section 504 and one under the IDEA stemming from the review of IEPs created for J. for the months of March, April, and May 2015. (*Id.* at 14-15.) Plaintiff filed a due process complaint against LCSD on March 20, 2015. (ECF No. 44-5.) The Court found that challenges to these IEPs were administratively exhausted on November 16, 2015, when the SRO issued her Final Decision, implicitly finding that J. had received a FAPE for purposes of both the IDEA and Section 504 during the relevant time period. (*See* ECF No. 41 at 14.)

## IV. STANDARD OF REVIEW

In reviewing an administrative decision under IDEA, a court must (1) receive the administrative record, (2) hear additional evidence at the request of a party, and (iii) grant such relief that it deems appropriate. 20 U.S.C. § 1415(i)(2)(C). The IDEA requires that the court base its decision on a preponderance of the evidence, and the burden of proof rests with the plaintiff. *See Fresno Unified Sch. Dist.*, 626 F.3d at 438.

Courts must give "due weight" to the special education decisions of ALJs. *Id.* at 441. This standard, while less deferential than a court's judicial review of other agency actions, nonetheless requires the court to refrain from substituting its own ideas of educational policy for those of the school authority it reviews. *Pittsburg Unified Sch. Dist.*, 850 F.3d at 1002-03 (citing *Clark Cty. Sch. Dist.*, 267 F.3d at 887-88).

To determine whether a student received a FAPE in compliance with the IDEA, the reviewing court must conduct a procedural and substantive inquiry. First, the court considers whether the school complied with the IDEA's procedures. *Rowley*, 458 U.S. at 206-07. The court then asks whether the IEP was "reasonably calculated to enable the child to receive educational benefits." *Id.* A child is denied a FAPE when the procedural

inadequacies cause the loss of an educational opportunity or seriously infringe on the parent's opportunity to participate in formulating the student's IEP. *Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1043 (9th Cir. 2013). Moreover, the IEP offered must be reasonably calculated to enable a child to make progress that is "appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. at 999. If a district's program for the child addresses his unique needs, provides educational benefit, and comports with the child's IEP, then the district has offered a FAPE, even if the parent prefers another program or the parent's preferred program is likely to result in a greater educational benefit. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987).

## V.  DISCUSSION

Plaintiff states that she is appealing "the SRO decision in its entirety." (ECF No. 46 at 1.) The Court first presents an overview of the prior administrative proceedings. Then, because Plaintiff filed two documents in support of her appeal, the Court addresses each individually. Ultimately, the Court finds that those portions of the briefs that actually address reviewable issues do not warrant reversal of the SRO's final decision.

### A.  Prior Administrative Proceedings

This appeal concerns three IEPs from J.'s 2014-15 school year, specifically those for the months of March, April, and May of 2015.

#### 1.  September 17, 2015 Hearing Before HO

At the first level hearing, the HO addressed three issues: first, did J. require a one-on-one aide for reading and science starting on March 20, 2015, for purposes of a FAPE; second, was Plaintiff provided with sufficient information of J.'s progress to meaningfully participate in the IEP meetings held in March, April, and May of 2015; and, third, did J. require additional support services in science and homeroom in order to receive a FAPE. (AR 399.) The HO issued his decision on October 1, 2015, finding for the District on all three issues. (AR 412-13.) Regarding the procedural requirements of the IDEA, the HO stated that "[a]ll of the documentation requested by [Plaintiff] was provided by the [District]" and "[Plaintiff] had access to all of [J.'s] work," such that Plaintiff was not

hampered from participating in the creation of J.'s IEPs. (AR 410.) Regarding the substantive requirements of the IDEA, the HO found that J. clearly made progress towards achieving the goals set forth in his IEPs, identifying the following as examples of J.s progress: (1) by spending the first 1.5 hours of 4 days of the week reading—half of the time in the specialized classroom with the special education teacher and the other half spent in the regular classroom with both the special and regular teachers—J. progressed from a reading score ("DRA") of 10 to a score of 20, 1 point short of meeting the goal set forth in his IEP; (2) Plaintiff asked that J. be pulled from science, which met only once per week (*see* AR 158), to spend time reading, and no goals were set in the IEPs for science; (3) J. progressed in academics as well as social relationships; and (4) J.'s test score in math improved. (AR 411-12.)

### 2. October 30, 2015 Interim Partial Decision of SRO

On appeal to the second level of review, the SRO issued two decisions. In the first, issued on October 30, 3015, the SRO made two findings: (1) that the HO had denied Plaintiff due process at the first level hearing by precluding Plaintiff from providing testimony and evidence of periods prior to March 2015 (AR 743); and (2) that the HO erred by not addressing whether the IEPs concluded the required contents (AR 746-47). The SRO found that (1) could be addressed by permitting Plaintiff to provide additional testimony and that (2) was ultimately harmless. (AR 749.)

Regarding (2), the SRO determined that the District had used benchmarks and short-term objectives to describe how progress towards J.'s annual goals would be measured and that each IEP contained a section entitled "Method for Reporting Student's Progress Toward Meeting Annual Goals" in which it indicated the frequency of reports on progress and the method in which they would be provided. (AR 747-48.) Thus, the SRO found that the District had complied with the IDEA's procedural requirement of including particular content. (AR 748.) Moreover, the SRO pointed out that "[w]hat specific activities a teacher may use to address . . . the objective . . . of 'staying within the lines when writing in a lined notebook' and at what intervals the teacher chooses to assess the child's skill

1  level thereon, are teaching methodology left to the discretion of the teacher, and the IDEA
2  requires only that the District include annual measurable goals, how progress will be
3  measured, and when progress will be reported." (AR 748-89.)

### 3. November 16, 2015 Final Decision of SRO

The SRO remedied (1) as identified above, *see infra* discussion V(A)(2), by conducting a hearing to take additional testimony. (AR 774.) At that hearing, the SRO considered additional testimony and evidence on three issues: (a) whether the HO erred by concluding Plaintiff was not denied meaningful participation in the IEP; (b) whether the HO erred in concluding that J. did not need a one-on-one aide or additional support services because he relied on an inappropriate standard of student progress, misinterpreted evidence, and relied too heavily on the fact that Plaintiff signed off on the relevant IEPs; and (c) whether the HO was biased or prejudiced in the structure of the trial and lacked fairness in the rules of procedure. (AR 775-76.)

As for (a), the SRO found that although Plaintiff complained that a "few of the spaces on the Specialized Progress Reports were not complete," Plaintiff was not precluded from ascertaining J.'s progress because these forms are district-specific forms and therefore not governed by the IDEA. (AR 780.) The SRO also found that the District did not violate FERPA by failing to let Plaintiff see J.'s class work or by failing to provide the specialized progress reports within the 45-day timeline specified in FERPA because the class work samples are not the type of records governed by FERPA or the IDEA and because the January IEP indicated that the District would send the specialized progress reports on a periodic basis, which the District did in March. (AR 781-82.) Moreover, the SRO held that Plaintiff attended each IEP meeting and was allowed to ask questions, that staff responded to questions, and that the District provided Plaintiff with information on J.'s progress. (AR 782.)

As for (b), the SRO found that whether J. was performing at grade level was not the metric under the relevant test and agreed with the HO's use of DRA levels as well as anecdotal evidence of Plaintiff's social advancement. (AR 783-84.) The SRO also found

that the HO had not misinterpreted evidence and that Plaintiff's claims about whether a formal assessment under the IDEA by an autism specialist had actually occurred, about whether J.'s regular education teacher knew about his IEP, about J.'s removal from science class, and about J.'s teachers' knowledge of his disability were without merit. (AR 785-87.) Finally, the SRO found that the HO did not rely on Plaintiff's signing of the IEPs and instead merely looked at the IEPs and determined they met the requirements of *Rowley*. (AR 788.)

Finally, as for (c), the SRO found that the taking additional testimony on November 10, 2015, cured any due process errors that may have occurred at the hearing before the HO and that nothing else in the HO's record shows any "due process irregularities." (*See* AR 788.) As a result of these three findings at the final hearing, the SRO upheld the HO's ultimate decision and ruled in favor of the District. (AR 799.)

**B.     Issues Raised in Opening Brief**

Liberally construed, the only portion of Plaintiff's opening brief that appears to relate to an appeal under the IDEA concerns whether J. was observed by an autism specialist without Plaintiff's consent, which is required in certain instances under the IDEA.[5] (ECF No. 43 at 6-7.) While neither the HO or SRO explicitly addressed the issue of parental consent below in their written decisions, the issue was brought up during the hearings by Plaintiff. (*See, e.g.*, AR 66-68.) The Court will therefore exercise its discretion as an appellate court in this case to review the issue. *See United States v. Tisor*, 96 F.3d 370, 376 (finding that courts of appeal generally do not decide an issue that was not addressed by the lower court but have discretion to review issues raised for the first time on appeal if doing so does not require development of new facts). Based on a review of the record as a whole, the Court finds that the autism specialist did not make an evaluation requiring parental consent under the IDEA.

///

---

[5]The Court addressed this in its prior order in the context of a Fourth Amendment violation only. (*See* ECF No. 41 at 6.)

34 C.F.R. § 300.310, which Plaintiff cites to in her opening brief (*see* ECF No. 43 at 6-7), discusses "observation" and the need for parental consent before an observation occurs. The Court assumes that Plaintiff is referring to the September 10, 2014 observation of J. by Sarah Dean, an autism specialist. (*See* AR 66.) Berrington, J.'s special education teacher, testified at the first-level hearing that she had asked Dean to observe J. in order to give Berrington some additional teaching strategies. (AR 68.)

The provision Plaintiff relies on, however, relates to an observation for purposes of evaluating whether a student qualifies for the benefits of the IDEA. *See* 34 C.F.R. § 300.310(b) ("[I]n determining whether a child has a specific learning disability," a qualified individual must "conduct an observation of the child's academic performance in the regular classroom after the child has been referred for an evaluation and parental consent . . . is obtained."); *see also id.* § 300.306(a)(1) (identifying those individuals who may determine whether a child is eligible for the IDEA). Here, there is no dispute that J. qualified for the benefits of the IDEA for the 2014-15 school year, as the school psychologist had agreed with the evaluation of J.'s prior school that he had a disability, and the autism specialist observed J. to help his teacher develop additional teaching strategies, not to determine whether J. qualified for the IDEA. (S*ee* AR 64, 66-68.) Therefore, the Court finds that the District did not need Plaintiff's consent to have the autism specialist observe J.

### C. Issues Raised in Supplemental Brief (ECF No. 46)

Plaintiff's supplemental brief quotes eleven statements from the SRO's decision but fails to make coherent arguments or cite to the record. In construing her supplemental brief liberally, the Court finds that Plaintiff makes the following arguments on appeal that the Court is permitted to address:[6] (1) the SRO erred in finding that the District provided

---

[6] Plaintiff refers to the August IEP. (ECF No. 46 at 4.) However, the Court's prior order indicated that it had jurisdiction to hear arguments relating to the March, April, and May 2015 IEPs that were raised during the state's administrative proceedings. (ECF No. 41 at 3.) Plaintiff also makes an argument that the Family Educational Rights and Privacy Act and No Child Left Behind Act provide her with private rights of action (ECF No. 46 at

1  sufficient materials that Plaintiff could understand (*see* ECF No. 46 at 2-3); (2) Plaintiff
2  was entitled to view MAPs and DRAs (presumably the actual tests used to evaluate them),
3  and to be provided an explanation of how to understand those scores (*see id.* at 3); (3)
4  the IEP's annual goals were too imprecise and not measurable (i.e., no specific methods
5  for measuring progress were provided by the District) (*see id.* at 3-4); (4) J.'s "IEP" was
6  "thrown together with insufficient focus on what skills [J.] needed to improve" (*id.* at 5); (5)
7  Plaintiff was not provided with information "on what common core standard was being
8  taught and if [J.] was able to comprehend and [meet] the standard" (id.); (6) J. received a
9  passing mark in reading but received a lower than average state standardized test score
10 (*see id.* at 6); (7) the District failed to meet its legal duty under Section 504 by failing to
11 conduct a fact-specific investigation as to whether a one-on-one aid was needed (*see id.*
12 at 6-7); and (8) the IEPs did not identify the teaching methodologies used by the teachers
13 who worked with J (*see id.* at 7).

14 Ultimately, the Court construes these contentions as making two procedural
15 arguments and one substantive one. The procedural arguments include that the District
16 (a) failed to provide sufficient information that was presented in an understandable format,
17 thereby hindering Plaintiff's meaningful participation in J.'s relevant IEPs; and (b) failed
18 to identify specific measures that would be used to measure J.'s progress. The
19 substantive argument is that (c) the District failed to provide J. a FAPE by refusing to
20 provide him with a one-on-one aide during his time in the general classroom.

21 The Court first addresses (c). During the first hearing, J.'s special education
22 teacher testified that J. receive small group and one-on-one instruction from 8:45 a.m. to
23 roughly 11 a.m. five days a week, small group instruction from the special education
24 teacher on Mondays from 12:15 p.m. to 12:55 p.m., and two days a week J. would be
25 pulled from science in the afternoon to do further small group instruction with the same
26 teacher. (AR 51-52.) The SRO found that because J. was making progress in the regular

---

28 at 7-8), but the Court also addressed those claims in its previous order (ECF No. 41 at 7-8).

classroom without a one-on-one aide there *all the time*, these limited one-on-one sessions were sufficient under the IDEA.

The Court agrees. The IDEA requires that disabled students be educated in the "least restrictive environment," a standard that requires:

> To the maximum extent appropriate, children with disabilities, including children in public . . . institutions . . ., [be] educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A). The IDEA's requirements that disabled students be educated in the least restrictive environment is evaluated through consideration of the following factors: "(1) the educational benefits of placement full-time in a regular class; (2) the non-academic benefits of such placement; (3) the effect [J.] had on the teacher and children in the regular class; and (4) the costs of mainstreaming [J.]." *Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H.*, 14 F.3d 1398, 1404 (9th Cir. 1994).

Given that this Court must give due weight to the SRO's findings and may not substitute "its own notions of sound educational policy for those of the school authorities which it reviews," *Ashland Sch. Dist. v. Parents of Student E.H.*, 587 F.3d 1175, 1182 (9th Cir. 2009), the current methodologies employed by the District have enabled J. to progress while satisfying the IDEA's goal of the "least restrictive environment." Plaintiff does not dispute that J. made progress under the implementation of the relevant IEPs. Instead, Plaintiff takes issue with the degree of progress J. made, apparently believing that having a one-on-one aide in the regular classroom all the time would have enabled J. to progress further and better satisfied factor (1) under *Sacramento City*. While this may be true in terms of higher point increases on J.'s standardized test scores, the Supreme Court has held that if a child is receiving instruction in the regular classroom, which J. received sixty-two percent of the time in the spring of 2015 (*see* AR 503), then the child's IEP meets the standards of the IDEA if it would be "reasonably calculated to enable the child to receive passing marks and advance from grade to grade." *Endrew F.*,

137 S. Ct. at 996 (citing *Rowley*, 458 U.S. at 204, 203 n.5). Here, J. did receive passing marks, even if he was not meeting the standardized testing score cutoffs in his grade. Moreover, the costs of providing a one-on-one aide to J. while he was in the regular classroom time would have outweighed any additional benefit such a scenario would provide. Not only would it cost the school district additional money to provide this aide, but it would detract from J.'s socialization with other students and the teacher in the regular classroom. Similarly, J.'s principal pointed out that the goal of education is for students to be able to learn independently, without dependence on others. (AR 144.) By remaining in the regular classroom without a one-on-one aide with him constantly, J. is better able to develop the skill of thinking and working independently. The Court therefore finds that the failure to provide a one-on-one aide to J. in his regular classroom did not result in the denial of a FAPE under the IDEA or Section 504.

Addressing Plaintiff's procedural argument under (a), Plaintiff takes issue with not receiving particular information and not being given sufficient tools to understand what this information meant in the context of J.'s progress. The Court disagrees and finds that Plaintiff received adequate information to meaningfully participate in the formation of the IEPs. For instance, J.'s general education teacher testified that she had a binder of his week's work sent home with him every Wednesday. (*See* AR 76, 111-12.) This was then memorialized in J.'s April 23, 2015 IEP after the District was informed by Plaintiff that she was not receiving all the work J. was doing in the classroom in these binders. (AR 150-54 (indicating that class composition books are one item that would not go home in the Wednesday folder, so copies were made for Plaintiff of these in-class documents so Plaintiff could see them as well).) J.'s special education teacher sent home specialized progress reports, which Plaintiff had requested to be added to the January IEP. (AR 72-73.) Moreover, at parent conferences, J.'s progress would be discussed with Plaintiff in terms that were meant to help make meaning of certain information. (*See, e.g.*, AR 93-94 (stating that the IEPs included measures of goals, e.g., standardized test scores and teacher evaluations, and that these were discussed with Plaintiff).) While the SRO pointed

out that the two types of documents were outside the scope of the IDEA, the provision by the District of these documents further supports the ultimate finding that Plaintiff was able to meaningfully participate in the development of J.'s IEPs. Similarly, under (b), Plaintiff appears to take issue with the lack of measures to evaluate J.'s progress stated in the IEPs. However, implicit in the IEPs is that teachers would evaluate J. to determine whether he had completed particular tasks and discuss those findings at IEP meetings with Plaintiff, and numerous IEPs identified certain standardized tests that would be used at the end of each unit to assess J.'s progress. Moreover, the IEPs indicated particular standardized test scores that J. ought to have reached by the end of the school year. (*See, e.g.*, AR 404-07 (HO discussing the various increases in testing scores over the course of the school year based on the testimony of J.'s teachers at the hearing)).) While the teacher's precise teaching methodologies may not have been laid out in the IEP, the meetings provided opportunities for Plaintiff to learn more about these methodologies and to provide input. In fact, Plaintiff did this when she requested that J. be pulled from science so that he could focus on improving his English language skills (e.g., reading and writing). For these reasons, the Court finds that the District did not fail to comply with the procedural requirements of the IDEA.

Based on the foregoing analysis, the Court finds that J. received a FAPE for the relevant time period and affirms the SRO's final decisions.

**VI.    CONCLUSION**

It is therefore ordered that Plaintiff's motion to add more definitive statement (ECF No. 46) is granted.

It is further ordered that Plaintiff's appeal is denied and the final decision of the State Review Officer is affirmed.

It is further ordered that Plaintiff's motion for settlement conference (ECF No. 51) is denied as moot.

///

///

The Clerk is instructed to enter judgment in favor of Defendant and close this case.

DATED THIS 25th day of September 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE